(C. D. 2122)

H. George Caspari, Inc. *v.* United States

United States Customs Court, Second Division

(Decided October 6, 1959)

*John D. Rode* for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: The protests enumerated in the schedule of protests, attached to this decision and made a part hereof, which were consolidated for purposes of trial, invite a reexamination of our decision in the case of *Marcel Schurman* v. *United States*, 38 Cust. Ct. 56, C.D. 1843. The subject merchandise is greeting cards of the type generally known as Christmas cards. It was assessed with duty at the rate of 22½ per centum ad valorem, or at the rate of 21 per centum ad valorem, when entered for consumption subsequent to June 30, 1956, pursuant to the provision in paragraph 1410 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, or as modified by the Sixth Protocol of Supplementary Concessions to said General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, for greeting cards, with greeting, title, or other wording.

The claim is that said merchandise consists of greeting cards, without greeting, title, or other wording, which are dutiable at the rate of 15 per centum ad valorem, or at the rate of 14 per centum ad valorem, within said paragraph 1410, as modified, respectively, *supra*.

Paragraph 1410, as modified by T.D. 51802, *supra*, insofar as here pertinent, reads as follows:

Greeting cards, valentines, tally cards, place cards, and all other
 social and gift cards, including folders, booklets and cutouts, or
 in any other form, wholly or partly manufactured:
 With greeting, title or other wording_____ 22½% ad val.
 Without greeting, title or other wording_____ 15% ad val.

T.D. 54108, *supra*, reduces the rates thereon as to such merchandise entered on and after June 30, 1956, to 21 and 14 per centum ad valorem, respectively.

In the cited case, we had occasion to construe the phraseology "with [without] greeting, title or other wording," in connection with certain greeting cards in folder form. These had a reproduction of a painting on the outer surface, a statement of the name, source, and location of the painting on the inside left-hand page, and the name of the printer and country of printing on the bottom portion of the last page. The inside right-hand page was completely blank.

We there held that the phrase in question was not ambiguous, and, hence, resort to legislative history to determine its meaning was not warranted. Accordingly, we stated:

\* \* \* The words "greeting, title or other wording" seem beyond peradventure of doubt to refer to any printed expression, of any nature whatsoever, appearing anywhere upon the card, in its condition as imported. We fail to see how Congress could have intended otherwise and yet have employed language so comprehensive and all inclusive in scope.

That congressional emphasis was not placed upon the greeting portion *per se* of the cards covered by the provision in question is patently manifest by the use of the additional language, of equal force, "title or other wording." To what does this additional language refer?

The word "title" is defined in part in Webster's New International Dictionary, second edition, as "A descriptive name; an appellation or designation." When used, without words of modification, the term "title" has as sensible a meaning as a "name; an appellation or designation" when applied to a picture reproduced upon a greeting card, as when applied to indicate the occasion to which the card relates, or the category into which it falls. Perhaps even more so, for it may be observed that so-called social cards do not ordinarily carry titles to signify their purposes or intended uses.

In any event, the language "other wording" seems clearly to be a phrase of extension added to cover any other printed matter such a card happens to contain, and we so construe it.

Illustrative samples of the cards involved in the present importations are in evidence as plaintiff's exhibits 1 through 5. Exhibits 3, 4, and 5 are substantially similar to those which were before us in the *Marcel Schurman* case, *supra*, except that both inside pages are blank and all lettering appears at the bottom of the back page. Thereon is indicated the name of the artist whose work is reproduced on the front of the card, the source of the original, the name of the publisher, the country of publication, and the name of the plaintiff as "Exclusive Representative." Exhibit 2 contains, in Japanese lettering indorsed upon the picture itself, the title of the picture and the name of the artist who executed it. On the back page are printed the names of the publisher and importer, as exclusive representative, and the country of origin. Exhibit 1 differs from all of the foregoing, in that the only lettering which it contains shows the name of the publisher and the fact that it was printed in West Germany exclusively for H. George Caspari, Inc., as sole distributor.

The only witness in the instant case was the president of the plaintiff corporation which has been importing greeting cards for the past 11 years and is considered one of the largest companies in the field. It was his opinion that the word "greeting" refers to any type of sentiment, such as Merry Christmas, Happy New Year, birthday wishes, etc., sent by one person to another; that cards with titles would be such as anniversary cards, death announcements, birth an-

nouncements, and the like, not cards with the title of a picture or of a book from which an illustration was taken; and that other wording would be of the type found on invitations, tallies, and the like, in the form of an expression, message, or text from the sender to the receiver. He did not believe that exhibits 1 through 5 contained either a title or other wording, as he understands those terms, and it has been stipulated that, as imported, none of the involved cards contains a "greeting."

Counsel for plaintiff adverts to this record and the legislative history of the phrase "with greeting, title or other wording," in support of his contention that the subject cards are not properly so described. Implicitly, this constitutes a contention that our construction of those words was contrary to the legislative intent.

It appears, as we observed in the decided case, that the predecessor provision for greeting cards, paragraph 1310 of the Tariff Act of 1922, read as follows:

> * * * greeting cards, and all other social and gift cards, including those in the form of folders and booklets, wholly or partly manufactured, with text or greeting, 45 per centum ad valorem; without text or greeting, 30 per centum ad valorem.

For the reason, particularly, that valentine cards, in the form of cutouts, standups, and mechanical pullers, etc., were held not to be embraced within the scope of said paragraph 1310, in the case of *Wilmsen* v. *United States*, 48 Treas. Dec. 786, Abstract 50628, a representative of the Greeting Card Association appeared before the House Committee on Ways and Means of the 70th Congress, second session, which was considering H.R. 2667, the bill which became the Tariff Act of 1930, to request that valentines be specifically enumerated in the provision for greeting cards. In a brief filed in connection with his appearance before the committee, this representative suggested the following changes in the paragraph:

> Greeting cards, valentines, tally, place, and all other social and gift cards, whether printed, lithographed, engraved, etched, or made by any other process, including folders, booklets, cutouts, mechanical pullers, pullouts, and drops, made from cardboard or paper, wholly or partly manufactured, with greeting, title, or other wording, 45 per centum ad valorem; without greeting, title, or other wording, 30 per centum ad valorem.

The House accepted the suggestion to the extent of providing *eo nomine* for valentines, but otherwise refrained from distinguishing between cards with, and cards without, verbal printing.

The same representative of the Greeting Card Association pursued the matter before a Subcommittee of the Senate Finance Committee, when H. R. 2667 was before it for consideration. He explained to the committee that the omission of the words "without greeting or text" would, in his opinion, permit greeting cards, without textual ma-

terial, to be classified as printed matter, rather than as greeting cards. He, therefore, suggested that the phrase "with or without text or greeting" be reintroduced into the provision.

The present language of the greeting-card provision of paragraph 1410, which for all pertinent purposes is the same as that quoted from T.D. 51802, *supra*, resulted from an amendment moved by Senator Walsh of Massachusetts upon the floor of the Senate (71st Congress, second session, Congressional Record, volume 72, part 6, page 5701). The Senator stated the purpose of his amendment as follows:

> The purpose of this amendment is to clarify the meaning and avoid litigation in the Customs Court as to which articles are covered by the paragraph. For example, the word "valentines" was added because the Customs Court held that "greeting cards" in the act of 1922 did not include valentines.
>
> Paragraph 1410 in its present form invites litigation, whereas with the changes recommended in this amendment, I believe that the intent will be so clear that customs litigation will be avoided.
>
> I believe that all the experts agree that what I have suggested is an improvement, and I think the members of the Finance Committee also agree that it is an improvement in the language which at present appears in the paragraph.

The amendment was adopted by the Senate, and subsequently accepted by the House of Representatives, with the following comment (71st Congress, second session, House of Representatives Report No. 1326):

> Amendment No. 716: Under the House Bill greeting cards, valentines, and other social and gift cards are dutiable at 35 per cent ad valorem; in the form of folders and booklets, 45 per cent ad valorem. The Senate amendment rewrites the House language, and provides that any of these items, with text, shall be dutiable at 45 per cent ad valorem; without text, 30 per cent ad valorem; * * *.

We have set forth the history of this provision at some length herein, not because we are shaken from the conviction that the phrase "greeting, title or other wording," is not ambiguous, but by reason of counsel's earnest contention that it is expressive of the intent with which those words were selected by Congress. It is urged that the foregoing indicates that when Congress replaced the phrase "text or greeting" with the new language, no change of meaning was intended, and that whether in the one form, or the other, the words relate exclusively to the message or greeting.

If, indeed, the circumstances surrounding the enactment of this portion of paragraph 1410 revealed the intent of the legislature, we would be inclined to attach much weight to it, for the "master rule, in the consideration of all statutes, has been to so interpret them as to carry out the legislative intent." *Procter & Gamble Manufacturing Co.* v. *United States*, 19 C.C.P.A. (Customs) 415, T.D. 45578. In this instance, however, the history of the legislation tells how the new language happened to be adopted, but very little about what it was

intended to mean. The fact that the House committee described the Senate amendment in terms of "text," rather than by the language actually used, can scarcely be said to indicate that the phrase "greeting, title or other wording," was employed as a substitute for the word "text," especially in view of the fact that the 1922 act made provision for both text and greeting.

Since paragraph 1410 of the present law represents a change from the former enactment, it must be assumed that a new interpretation is required. "It is a well-established rule of construction that, ordinarily, a change in the language of a statute imports a change in meaning unless the contrary is made plainly to appear in other ways." *Fynaut & Popek* v. *United States*, 23 C.C.P.A. (Customs) 265, T.D. 48112.

Of necessity, therefore, the words "title or other wording," which are not the same as the word "text," clearly must be given a meaning which is not the same as the meaning of the word "text." We are not persuaded by anything which has been presented to us in this case, that "title" must be restricted to the designation of the card, or that "other wording" is limited to the message conveyed from the sender to the receiver. In this respect, the conclusions reached in the case of *Marcel Schurman* v. *United States*, *supra*, are adhered to. It does appear, however, that the language of the decision, if literally construed, is so broad as to encompass every printed word appearing upon the card, and would not take into account, for example, that, under the ordinary requirements of the marking statute, section 304 of the Tariff Act of 1930, as amended, the country of origin is usually shown on imported merchandise. Obviously, a recital that a card was "Made in Denmark" or "Printed in West Germany," being a compliance with the marking statute, would not constitute, "other wording" within the contemplation of said paragraph 1410. And, upon further reflection, we are now inclined to the view that neither would such incidental data as the name of the publisher or printer, or the name of the importer, or of the American distributor, or the fact of an exclusive agency, be embraced by that phrase. Since expressions of that kind have no direct relationship to the character of the card, or of any illustrations, drawings, or prints on the card, it would seem that they ought not to be permitted to dictate its classification or be construed as "other wording," within the purview of this portion of paragraph 1410.

To the extent hereinabove indicated, the rule of the earlier decision on this subject matter is modified. Inasmuch as the instant record reveals that some of the imported cards, as exemplified by plaintiff's exhibit 1, fall within this category, the claim for their classification as greeting cards, without greeting, title, or other wording, and the consequent assessment of duty at the rate of 15 per centum ad valorem

or at the rate of 14 per centum ad valorem, as provided in said paragraph 1410, as modified by the respective trade agreements, *supra*, depending upon the date of entry for consumption, is, therefore, sustained. All other claims as to all other cards included within the importations covered by these consolidated protests are, however, overruled.

Judgment will be entered accordingly.